**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **MAFCO ELECTRICAL CONTRACTORS, INC.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:07-cv-00114 (VLB)** |
| **TURNER CONSTRUCTION COMPANY,** | : | |
| **Defendant.** | : | **March 26, 2009** |

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S PARTIAL MOTION FOR
SUMMARY JUDGMENT [Doc. #61]**

Mafco Electrical Contractors, Inc., ("Mafco"), an electrical subcontractor,
brings this suit for damages against Turner Construction Company ("Turner"), a
general contractor, alleging breach of a construction subcontract for the Town
Square Project in Hartford, Connecticut. The Court has diversity jurisdiction
pursuant to 28 U.S.C. § 1332(a)(1) as Mafco is a Connecticut corporation with a
principal place of business in Hartford, Connecticut and Turner is a New York
corporation with a principal place of business in New York, New York. Mafco
seeks $874,855.00 in an equitable adjustment to the contract, and $43,000.00 in
unpaid contract balances. Turner has filed the within partial motion for summary
judgment on Mafco's equitable adjustment claim only, arguing that a "no
damages for delay" clause bars Mafco from recovering money damages for delay
claims. [Doc. #61] For the reasons hereinafter set forth, Turner's motion is
GRANTED.

## Facts

Examination of Turner's Local Rule 56(a)1 statement, Mafco's response, and the exhibits attached thereto yield the following undisputed material facts. Turner is a general contractor. Mafco is an electrical subcontractor. In October 2003, Turner entered into a general construction contract with Northland Trumbull and Northland Tower LLC (hereinafter "the owner") to provide general contracting services in connection with the Hartford 21 Project (Town Square Project). Turner solicited bids from subcontractors to perform various portions of the project work. On September 22, 2003, Mafco submitted bids for two packages of electrical work on the project. Mafco's bids were the highest of the four received by Turner. On February 6, 2004, Turner and Mafco entered into a subcontract wherein Mafco would perform electrical work on the project for the sum of $1,717,089 (hereinafter "the Subcontract"). Under a clause titled "Extension of Time," the Subcontract states:

> Should the Subcontractor be delayed, obstructed, hindered or interfered with in the commencement, prosecution or completion of the Work by any cause including but not limited to any act, omission, neglect, negligence or default of [other parties] . . . the Subcontractor shall be entitled to an extension of time for a period equivalent to the time lost by reason of any and all of the aforesaid causes.

[Doc. #66, Ex. D] The clause further states that Mafco would not be entitled to this extension of time unless it gave written notice within 48 hours of the commencement of the delay. The clause continues:

> The Subcontractor agrees that it shall not be entitled to nor claim any

2

**cost reimbursement, compensation or damages for any delay, obstruction, hindrance or interference to the Work except to the extent that Turner has actually recovered corresponding cost reimbursement, compensation or damages from the Owner . . . Subcontractor expressly waives and releases all claims or rights to recover lost profit . . . recovery of overhead . . . and any other indirect damages, costs or expenses in any way arising out of or related to the Agreement, including the breach thereof by Turner, delays, charges, acceleration, loss of efficiency or productivity disruptions and interferences with the performance of the work.**

*   *   *

**Subcontractor expressly acknowledges that Turner is not obligated or required to pursue Subcontractor claims as against Owner if Turner, in its sole discretion, after review of Subcontractor's claim, has deemed the claim to lack merit in whole or in part.**

[Doc. #66, Ex. D] Collectively, these sections of the Subcontract are referred to by the parties as the "no damages for delay clause." The Subcontract also provides that Mafco's subcontract price includes all costs for out of sequence work, phasing of work, and protection of work. On May 28, 2004, Mafco executed a "Subcontract Information Letter" which extended the period for completion of electrical work to a period beginning in November 2005 and ending in May 2006 (hereinafter the "performance period.") [Doc. #66, Ex. E] On March 31, 2006, two months prior to the deadline for the completion of all electrical work, Mafco certified in a request for payment that it had substantially completed its work. Thereafter, Mafco performed the remaining ancillary punch list work. The last date that Mafco worked on the project was in February 2008.

Mafco alleges that it was damaged by Turner's: "abandonment of the Subcontract schedule," "requiring . . . out of sequence [work]," failure "to provide

3

reasonable access," failure "to timely complete antecedent work," failure "to properly coordinate the work schedules," compression and acceleration of "Mafco's work," "failure to process and issue necessary information in a timely fashion," and "continually requiring Mafco to perform extra work." [Doc. #76, ¶ 9] Turner argues that it is entitled to summary judgment as a matter of law because the no damages for delay clause bars Mafco from recovering for any of these alleged breaches. Mafco counters arguing that Turner's failure to properly and timely perform the Subcontract was so egregious as to qualify an exception to the enforcement of the no damages for delay clause.

### Discussion

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court "construe[s] the evidence in the light most favorable to the non moving party and . . . draw[s] all reasonable inferences in its favor." Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986))."The moving party bears the burden of showing that he or she is entitled to summary

4

judgment." <u>Huminski</u>, 396 F.3d at 69. "[T]he burden on the moving party may be discharged by 'showing'-that is pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." <u>PepsiCo, Inc. v. Coca-Cola Co.</u>, 315 F.3d 101, 105 (2d Cir. 2002). "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." <u>Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.</u>, 302 F.3d 83, 91 (2d Cir. 2002).

The "No Damages for Delay" Clause

Turner argues that a clause in the Subcontract limits Turner's liability for any damages incurred by Mafco as a result of delay. Mafco does not dispute the applicability of the "no damages for delay" clause to its claims, but argues that one of several equitable exceptions to enforcement should apply.

Connecticut first recognized the enforceability of no damages for delay clauses in <u>White Oak Corp. v. Dept. of Trans.</u>, 585 A.2d 1199 (Conn. 1991). Relying on several learned treatises and adopting the law of New York, the court upheld the trial court's ruling that "no damages for delay clauses are generally valid and enforceable and are not contrary to public policy."[1] <u>Id.</u> at 1203. "'No damages' provisions are sometimes regarded as serving such laudable goals as limiting

---

[1] <u>See</u> 11 A. Corbin, Contracts § 58.17 ("Construction contracts often contain a clause favored by owners in their contracts with general contractors and by the latter in contracts with subcontractors. The clause provides that there will be no damages for delay . . . Such clauses are routinely enforced.")

vexatious disputes." 2 S. Stein, Construction Law ¶ 6.11(2)(a) (2008). Notwithstanding their advantages, no damages for delay clauses are not enforceable in all circumstances.

A contractee's immunization from damages for its own breach raises equitable issues. The Second Circuit has noted "the universally accepted proposition that contract provisions aimed at relieving a party from the consequences of his own fault are not viewed with favor by the courts." Port Chester Electrical Construction Corp. v. HBE Corp., 894 F.2d 47, 48 (2d Cir. 1990).[2] Therefore, no damages for delay clauses, though valid, are strictly construed against the party seeking relief from liability. Id. The law of both Connecticut and New York recognizes four situations where such clauses will not be enforced.

> Generally, even with such a clause, damages may be recovered for: (1) delays caused by the contractee's bad faith or its willful, malicious, or grossly negligent conduct, (2) uncontemplated delays, (3) delays so unreasonable that they constitute an intentional abandonment of the contract by the contractee, and (4) delays resulting from the contractee's breach of a fundamental obligation of the contract.

White Oak, 585 A.2d at 1203, quoting Corinno Civetta Construction Corp. v. New York, 67 N.Y.2d 297 (N.Y. 1986). Due to the dearth of Connecticut precedent and the Connecticut Supreme Court's express adoption of the New York standard, the Court will be guided in its application of these principles by the law of New York.

---

[2] Unlike the plaintiff in Port Chester, Mafco does not dispute the scope of the no damages for delay clause. It does not contest the defendant's characterization of its claims as delay claims subject to the exclusive remedy of an extension of time.

The Court must determine whether Mafco has shown any conduct, or any disputed issue of material fact as to conduct, that would make it inequitable, under the above-stated four exceptions, to enforce the exculpatory no damages for delay clause. Mafco argues that Turner's conduct would fall into the first, second, and fourth exceptions as stated above. The Court shall address each in turn.

### Bad faith or Willful, Malicious, or Grossly Negligent Conduct

Mafco argues that there is a disputed issue of material fact as to whether Turner was grossly negligent in causing Mafco's delays. Turner argues that, if proven, Mafco's allegations amount to no more than ordinary negligence, and that the exculpatory clause therefore bars money damages.

A no damages for delay clause will not exculpate "grossly negligent or willful conduct, i.e., conduct which 'smacks of intentional wrongdoing.'" Corrino Civetta, 67 N.Y.2d at 305, quoting Kalish-Jarcho v. City of New York, 58 N.Y.2d 377, 385 (N.Y. 1983). The conduct of the defendant must show "willfulness, maliciousness, abandonment, bad faith or other theories through which runs the common thread of intent." Kalish-Jarcho, supra. In overturning a jury verdict awarding delay damages to a contractor whose contract ran 28 months over the original contract period, and who alleged that the owner failed to coordinate the activities of the contractors and made "endless" revisions to the building plans, the Kalish-Jarcho court held that even if the jury had found gross negligence under those facts, the plaintiff could not recover unless he also proved that "the

7

[defendant] acted in bad faith and with deliberate intent delayed the plaintiff in the performance of its obligation." Id. at 386.

"Gross negligence," as a term, has no definition in Connecticut tort law, as Connecticut does not recognize degrees of common law negligence.[3] However, the term has found its way into Connecticut jurisprudence when describing conduct "that is not intentional but is still more culpable than negligence. This type of conduct is labeled reckless or wanton misconduct." D. Wright et al., Connecticut Law of Torts 3D 157 (2004). The term has its roots in the old Connecticut Guest Statute for automobile accidents. Id. Recklessness is also a creature of statute. See Conn. Gen. Stat. § 14-222. Under Connecticut law, a person acts recklessly when they know or should know of facts that create a high degree of risk of harm to another and deliberately proceed to act or fail to act in conscious disregard of or with indifference to the risk. Matthiessen v. Vanech, 266 Conn. 822, 832-33 (Conn. 2003); Restatement (Second) of Torts § 500 Comment (a). These principles are comparable to the "bad faith or willful, malicious" conduct with which New York law groups gross negligence, rather than describing a greater degree of negligence not predicated on the actor's cognitive state not recognized in Connecticut, as Mafco seems to argue.

> An action based upon willful or wanton misconduct is apart from the action for negligent conduct. These have been often treated under the head of negligence actions, and sometimes by this court. The

---

[3]"We have never recognized degrees of negligence as slight, ordinary, and gross in the law of torts." Matthiessen v. Vanech, 266 Conn. 822, 850 n.10, 836 A.2d 394 (2003), quoting Decker v. Roberts, 125 Conn. 150, 157, 3 A.2d 855 (1939).

**difference is one of kind, not merely of degree. Negligence does not have for its base either willfulness or wantonness, while misconduct which is merely negligent is never either willful or wanton.**

Bordonaro v. Senk, 109 Conn. 428, 431 (1929).

"The standard of proof required under the 'bad faith' exception is particularly high; the wrongdoing must be so extreme as to 'contraven[e] ... acceptable notions of morality.'" Premier-New York, Inc. v. Travelers Property Cas. Corp., 20 Misc.3d 1115(A), 867 N.Y.S.2d 20 (Table) (N.Y.Sup. 2008) quoting Kalish-Jarcho, 58 N.Y.2d at 385. Delays arising from "inept administration,"[4] "poor planning and scheduling,"[5] and "fail[ure] to supervise competently"[6] fall within an exculpatory clause. Courts will only find that conduct falls into the "bad faith" exception when there is "substantial evidence of bad faith and malicious conduct," such as where a general contractor broke repeated promises to provide personnel needed for a subcontractor's performance, inflated back charges, and stole material from a subcontractor.[7] Mafco has not cited any legal authority for its contention that Turner's failures rose to the level of gross negligence.

---

[4] S.N. Tangor, Inc. v. AFC Enterprise, Inc., 276 A.D.2d 363 (1st Dept. 2000) (affirming summary judgment for general contractor whose delays caused extra work for subcontractor).

[5] T.J.D. Construction Co., Inc. v. City of New York, 295 A.D.2d 180 (1st Dept. 2002) (affirming summary judgment for owner who failed to repair defective machinery despite prior bad test results, causing seven month delay).

[6] U.S. ex rel Petrocelli Electric Co., Inc. v. Crow Construction Co. et al, 93CV8387, 1999 WL 791683 at *6 (S.D.N.Y. October 05, 1999) (general contractor's failure to coordinate the activities of the subcontractors was, at most, ordinary negligence.)

[7] Id. (discussing U.S. ex rel Evergreen Pipeline Construction Co. v. Merritt Meridian Construction Co., 95 F.3d 153 (2d Cir. 1996))

Mafco does not allege facts constituting gross negligence. Here, Mafco alleges that "Turner's overall coordination was 'the worst' ever witnessed," that it "failed miserably in coordinating" purchasing and delivery information, was "incompetent[]" and greatly increased the difficulty and cost of Mafco's work, and that Turner's Executive Vice President had to personally map out the location of exit signs two years after the original completion date and purchase materials on his own credit card. It further quotes the owner's representative as saying that Turner "continually failed to meet dates" and was the "worst [he had] ever seen" in his twenty years in the construction industry. [Doc. #73, 18-20] However, neither explicit or implicit in these allegations, or in those facts alleged in Mafco's complaint, is any willful or malicious, or reckless conduct, or even any allegation that Turner was concurrently aware of the harms Mafco was allegedly suffering. [Doc. #1]

Although Mafco cites letters complaining about Turner's performance, these letters, together with the characterizations cited above, do not assert conduct so egregious as to obviate the no damages for delay clause. These letters also show that Mafco did not describe its damages with the sort of timeliness and detail required by the Subcontract. Mafco admits that it first notified Turner about the harms it was suffering in a letter dated August 19, 2004. This letter refers to "delay of transformer vault, maintaining temporary power from permanent service, duplication of work, unforseen conditions, damaged work, [and] performing work out of sequence." [Doc. #76, Ex. 2] The document

does not describe any specific dates, circumstances or duration of non-performance, harms suffered, or consequences to Mafco. In another letter dated June 2, 2005, Mafco refers generally to a "series of events" harming Mafco. Mafco states that it was harmed by "work being performed out of sequence," "being forced to return to the same area," and "delays to schedule." [Doc. #66, Ex. S] This letter does not overcome Mafco's failure to cite facts qualifying for the exception to the enforcement of the no damages for delay clause.

The absence of notice of delay is particularly persuasive in this case because the Subcontract requires a detailed written notice to be supplied within 48 hours of a delay. The absence of delay notice and the scarcity of details concerning Turner's defaults illustrate the insufficiency of facts to support Mafco's claim of gross negligence.

Mafco acknowledges that it did not supply the specified notice, but claims that by accepting Mafco's first change order without insisting upon timely notice, Turner waived the notice requirement of the Subcontract and established a course of dealing such that it was required to pay claims for damages upon demand, no matter how untimely they were.

A notice requirement is a strict condition precedent to recovery under a construction contract. <u>Cecio Bros., Inc. v. Town of Greenwich</u>, 156 Conn. 561, 567-68 (Conn. 1969). In determining the scope of a contract, "[t]he plain, clear language of the contract must be accorded its logical effect." <u>Four D's, Inc. v. Mattera</u>, 25 Conn.App. 308, 313, 594 A.2d 484 (1991). "The intention of the parties

11

to a contract is to be determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." E & F Construction Co. v. Rissil Construction Associates, Inc., 181 Conn. 317, 320, 435 A.2d 343 (1980); Fletcher Terry Co. v. Grzeika, 1 Conn.App. 422, 430 31, 473 A.2d 1227 (1984). "In situations in which the parties have their agreement in writing, their intention is to be determined from its language and not on the basis of any intention either may have secretly entertained." (Internal quotation marks omitted.) Thompson & Peck, Inc. v. Harbor Marine Contracting Corporation, 203 Conn. 123, 130 31, 523 A.2d 1266 (1987).

A single waiver of a contractual right does not constitute a course of dealing abrogating that right. See, e.g., International Resource Recovery, Inc. v. U.S., 60 Fed. Cl. 428, 432 (2004) ("waiver of a contractual requirement by course of dealing cannot be established by a single occurrence"). The subcontract could not be modified unless both parties agreed to do so in writing. [Doc. #66, Ex. D] Turner's single waiver of the right to notice of Mafco's damages was not a course of dealing abrogating Turner's right to notice. Even if it was, Mafco's failure to notify Turner of the effect of Turner's performance deprived Turner of the requisite knowledge necessary to commit gross, wanton, malicious or reckless negligence in its performance of the contract because it could not act intentionally or in reckless disregard of a harm of which it was not aware.

12

Put another way, it is clear from the contract that Turner and Mafco, two sophisticated commercial parties, agreed to limit Turner's exposure to damages claims for ordinary delays and costs which would inevitably arise from the lengthy and complicated performance of a multi-million dollar construction contract. Turner had to supervise the performance of multiple subcontractors who were performing different tasks around the large construction site every day. The notice provision was closely tied to the no damages for delay clause, in that the parties agreed that Turner would not be responsible for the harms suffered by one subcontractor unless that subcontractor gave enough notice to Turner to allow Turner to correct the problem in a timely manner. The lack of concurrent notice diminished Turner's ability to limit Mafco's own damages. Mafco's characterization of Turner's performance as grossly negligent is belied by Mafco's failure to give Turner the opportunity to respond to and correct problems at the work site. "To constitute willful injury there must be design, purpose and intent to do wrong and inflict the injury; while to constitute wanton negligence the party doing the act or failing to act must be conscious of his conduct and, though having no intent to injure, must be conscious from his knowledge of surrounding circumstances and existing conditions that his conduct will naturally or probably result in injury." Perron v. Robert, No. CV000073800S, 2002 WL 31538217 (Conn. Super. Nov. 1, 2002). Because Mafco failed to give the contractually mandated notice, the Court concludes that it cannot show that

13

Turner was aware that its conduct would probably injure Mafco.[8]

Upon examination, the most persuasive fact cited by Mafco to support its claim of gross negligence was not related to Mafco's electrical work. Mafco cites the owner's representative's statement that Turner's supervision was the "worst ever seen" to support its claim that Turner was grossly negligent in injuring Mafco. In fact, the statement was made in reference to Turner's supervision of the hanging of Sheetrock and fire caulking- not Mafco's electrical work. [Doc. #76, Ex. 1]

Mafco does not set forth any other specific examples of Turner's wrongful behavior that it hopes to prove at trial that would tend to show Turner's gross negligence. Rather, it relies on the same vague and conclusory assertions of delay, mismanagement, and failure of coordination in its brief that it asserted in its complaint. At summary judgment, a party must marshal its evidence and present facts, not general allegations or broad characterizations of the evidence. "An opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Mafco has not pointed out disputed facts that would support a reasonable factfinder's conclusion that Turner was grossly negligent: the "qualitative level of misconduct by the contractee [that is] the

---

[8] Compare Williams and Sons Erectors, Inc. v. South Carolina Steel Corp., 983 F.2d 1176, 1184 (2d Cir. 1993) (factfinder could conclude general contractor was grossly negligent in accepting defective plan documents when it was undisputed that general contractor had notice of the defective nature of the plans).

14

equivalent of an intentional wrong." <u>Corrino Civetta</u>, 67 N.Y.2d at 305.

<u>Uncontemplated Delays</u>

Mafco argues that the exculpatory clause should not be enforced because Mafco could not have contemplated delays of the length it suffered when it first contracted with Turner. "For a delay to be uncontemplated, it must be uncontemplated by both parties, or more objectively stated, must not be reasonably forseeable." <u>White Oak</u>, 585 A.2d at 1204. Delays of a type described in the contract are not uncontemplated. Delays can only be considered uncontemplated because of length alone if they are so lengthy as to constitute an abandonment of the contract. <u>Id.</u> "[The plaintiff's] position, that it was not required to anticipate an 'inordinate' delay, is simply unfounded." <u>Id.</u> (finding six-month delay period not inordinate). Here, Mafco does not argue that it did not expect delays of the type encountered, but only that it did not contemplate a delay of what it characterizes as 33 months. However, Mafco's substantial completion date was February 3, 2006, as approved by Mafco in the Subcontract Information Letter, which was executed only three months after Mafco signed the original contract. [Doc. #66, Ex. E] Mafco's principal swore before a notary public that Mafco's work was 100% complete by March 31, 2006. [Doc. #66, Ex. K] Though Mafco continued to do some work on the project after March 2006, "substantial completion" does not, in construction law, even mean 100%

15

completion.[9] It also excludes punch list work. See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. PAC Group, LLC, 2002 WL 31255517, Nos. CV020814811S, CV020814812S at *3 (Conn. Super. Sept. 3, 2002); Liew v. H&Y Const., Inc., 2007 WL 1414993, FSTCV07040111665 (Conn. Super. April 27, 2007); In re John Grace & Co., Inc., 205 F.3d 1323, slip op. (2d Cir. 2000). Mafco's certification of completion occurred within the period for electrical work set forth in the Subcontract Information Letter. [Doc. #66, Ex. E] A construction delay of two months in a multi-year, multi-million dollar construction contract is not inordinate. Even if Mafco were not estopped from stating that it achieved substantial completion on March 31, 2006, and the Court instead credited Mafco's expert's estimation that Mafco was not substantially complete until September 2006, a delay of seven months has not, in any case, been found to be a delay constituting an abandonment of the contract.[10] Therefore, the Court concludes that it should enforce the no damages for delay clause.

### Breach of a Fundamental Obligation of Contract

The exception to the enforcement of a no damages for delay clause for breach of contract is a narrow one.

---

[9] See 5 BRUNNER & O'CONNOR CONSTRUCTION LAW § 15.15 ("Unless otherwise defined by the contract to mean 'final completion'—the date on which the work is 100% complete, 'completion' ordinarily is understood to mean 'substantial completion'—the date on which all material elements of the work are sufficiently complete in conformance with the contract so that the owner can use the work for its intended purpose.")

[10] See White Oak, 585 A.2d at 1204 (six months); T.J.D. Construction Co., Inc., 295 A.D.2d at 180 (seven months); Blau Mechanical Corp. v. City of New York, 158 A.D.2d 373 (1st Dept. 1990) (two years); Kalish-Jarcho, 58 N.Y.2d at 385 (28 months).

> Because the exculpatory clause is specifically designed to protect the contractee from claims for delay damages resulting from its failure of performance in ordinary, garden variety ways, delay damages may be recovered in a breach of contract action only for the breach of a fundamental, <u>affirmative obligation the agreement expressly imposes</u> on the contractee. Typical of such claims are those in which the contractee has failed in its obligation to obtain title to the work site or make it available to the contractor so that it may commence construction of the agreed upon improvements.

<u>Corrino Civetta</u>, 67 N.Y.2d at 313 (emphasis added). Mafco argues that Turner fundamentally breached the subcontract by failing to perform discretionary acts not expressly mandated by the subcontract. Mafco does not cite any express obligations imposed by the Subcontract. Instead, it argues Turner did not grant Mafco extensions of time in which to perform, and did not submit Mafco's claims for delay damages to the owner. Turner responds that: 1) neither of these breaches would rise to the level of a failure of a fundamental obligation, 2) that Mafco received extensions of time and 3) Turner was not obligated to submit Mafco's claims to the owner.

Mafco has not cited any case where a court, in Connecticut or elsewhere, found a breach of a fundamental obligation of contract entitling the plaintiff to delay damages despite an exculpatory clause. The only case cited by Mafco which involved a contract with an exculpatory clause is <u>Regional School Dist. No. 9 v. Wayne Const. Co.</u>, 2000 WL 727504, No. CV 990337880 S (Conn. Super. May 18, 2000). In this case, the court simply confirmed the decision of an arbitral board to award delay damages despite the arbitrator's decision not to address the no damages for delay clause, and concluded that it had no authority to

17

overturn an arbitration award in the face of an unrestricted submission to arbitration unless the arbitrator's conduct was "egregious or patently irrational." As the arbitral board did not set forth a memorandum of decision, the decision of the court to confirm that award is of little precedential value.

In <u>Earthbank Co. v. City of New York</u>, 172 A.D.2d 250 (1st Dept. 1991), the court found that the owner's failure to obtain a wetlands permit necessary to begin construction was a fundamental breach of contract. In another case, a two-year delay caused by the owner's faulty subsurface exploration, frequent plan changes, and the invasion of protestors onto a job site were not breaches entitling a contractor to recover over a no damages for delay clause. <u>Blau Mechanical Corp. v. City of New York</u>, 158 A.D.2d 373 (1st Dept. 1990). In this case, Mafco has alleged that Turner, through its subsidiary, Turner Logisitics, failed to timely provide materials and purchasing and delivery information so that Mafco could install certain light fixtures. However, Mafco did eventually receive the materials and complete its work, except for punch list items, by September 2006 at the latest. This is not a complete failure of a condition precedent to performance, as in <u>Earthbank</u>, but a delay in performance, as in <u>Blau</u>. Therefore, there is no fundamental breach. A fundamental breach must completely frustrate the performance of one of the parties, not merely delay it for a time. <u>See Corinno Civetta</u>, 67 N.Y.2d at 313.

Mafco's argument that Turner failed to give it extensions of time to perform is unsupported by the evidence, as Mafco elsewhere seeks damages for Turner's

18

extension of the schedule such that Mafco did not substantially complete its work until September 2006. It cannot on the one hand argue that it was not given an extension of time in which to perform, and on the other argue that its performance was extended over too long a period of time. The evidence shows that each change order between Turner and the owner extended Mafco's time for performance. There is no evidence that Mafco ever asked for an extension of time did not receive one. Therefore, the Court concludes that Mafco received extensions of time.

Mafco also argues that Turner's failure to submit its delay claims to the owner is a fundamental breach of contract. However, the subcontract states, "Subcontractor expressly acknowledges that Turner is not obligated or required to pursue Subcontractor claims as against Owner if Turner, in its sole discretion, after review of Subcontractor's claim, has deemed the claim to lack merit in whole or in part." [Doc. #66, Ex. D, Art. V] As Mafco argues that it was damaged by Turner's actions and omissions, and not the owner's, Turner's decision not to submit Mafco's claims to the owner is not a fundamental breach of contract. As all of Mafco's arguments for holding Turner's actions to be a fundamental breach of contract cannot be sustained, the Court will enforce the no delay for damages clause to bar Mafco's delay claims.

Turner's partial motion for summary judgment [Doc. #61] is GRANTED as to Mafco's delay claims. As the amount in controversy in Mafco's remaining claim is less than $75,000, the Court lacks diversity subject matter jurisdiction and

**DISMISSES Mafco's remaining claim without prejudice to refiling in the Connecticut Superior Court for the Judicial District of Hartford. The Clerk is directed to CLOSE this file.**

**IT IS SO ORDERED.**


_____ /s/ _____

**Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut:  March 26, 2009.**